UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

JOEL NIEVES, JR.,                                    :

          Plaintiff,                    :          REPORT & RECOMMENDATION
                                                                15 Civ. 4460 (RA) (GWG)
    -against-                                  :

COMMISSIONER OF SOCIAL SECURITY,         :

                                                     :

        Defendant.
----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Joel Nieves, Jr. brings this action pro se pursuant to 42 U.S.C. §§ 405(g) and 1383(c)

seeking review of the final decision of the Commissioner of Social Security denying his request

for waiver of recovery of an overpayment of disability insurance benefits.  The Commissioner

has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1]  For the reasons

stated below, the Commissioner's motion should be granted.

I.      BACKGROUND

    A.    Proceedings Before the Agency and the ALJ

      Nieves filed a claim for disability benefits after suffering a stroke at the age of 23.  SSA

Administrative Record, filed November 16, 2015 (Docket # 10) ("R."), at 77, 156.  The

Commissioner determined that Nieves had been disabled as of May 1, 1986, and awarded him

benefits.  R. 77.  In 2011, the Social Security Administration ("SSA") determined that Nieves

had received an overpayment of benefits because Nieves had received work-related earnings

---

[1] See Notice of Motion for Judgment on the Pleadings, filed Jan. 15, 2016 (Docket # 16);
Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings, filed
Jan. 15, 2016 (Docket # 17) ("Comm. Mem.").

between 2007 and 2010.  See R. 29-30.[2]

SSA calculated the amount of overpayment as totaling $47,196.80, R. 29, and provided notice of the overpayment to Nieves.  See R. 31-32, 158-59.  Nieves did not dispute that an overpayment had occurred and that SSA's calculation of the overpayment was accurate.  R. 31-41.  He did request a waiver of the overpaid funds, however, on the grounds that he was not at fault for SSA's overpayment and because repayment would create an undue financial hardship.  Id.

On October 12, 2011, Nieves's request for a waiver of his overpayment was denied.  R. 34.  A conference was held on November 15, 2011, regarding SSA's waiver determination, and the request was denied again.  R. 26-30.  Nieves then requested an administrative hearing to dispute the denial of his waiver request.  On October 15, 2012, Nieves appeared before Administrative Law Judge John Noonan ("ALJ"), where he was represented by an attorney from the law firm of Shearman & Sterling.  R. 149-71.  Nieves offered little testimony himself at the hearing.  Instead, Nieves's attorney made a number of arguments regarding the waiver.  During the argument, Nieves's attorney conceded that Nieves had received letters in the mail informing him of his duty to notify SSA of work activity.  See R. 155.  The attorney contended, however, that Nieves "did not pay [] much attention to the contents of the letter[s] beyond what was written on the first page."  Id.  Nieves's attorney also suggested that Nieves was under the impression that "once he timely filed his taxes," information of his work activity "would somehow be communicated to the Social Security Administration."  Id.  His attorney also argued

---

[2] Recipients of disability benefits are required to inform the SSA of any work activity.  See 20 C.F.R. § 404.1588(a)(2).  Indeed, a claimant's ability to perform work activity is a factor in the Commissioner's determination of disability.  See 42 U.S.C. § 423(d); 20 C.F.R. §§ 404.1505, 404.1510, 404.1520(a)(4)(i).

that Nieves's limited education and early stroke had impaired his ability to understand his responsibility to report work activity to SSA.  R. 162-63.

To determine the extent of his intellectual functioning, the ALJ ordered Nieves to undergo a psychiatric examination with intelligence testing.  R. 164-65, 169.  On March 11, 2013, psychologist Dr. Alan Dubro performed a consultative psychiatric and intelligence evaluation of Nieves.  R. 127-39.

Dr. Dubro noted that Nieves had completed the eleventh grade and had been working as a lobby attendant since 2006.  R. 127, 157.  Nieves reported that he could independently dress himself, maintain his hygiene, prepare meals, clean, shop, and manage his own money.  R. 137. Dr. Dubro described Nieves as "[c]oherent and goal directed," with fluent and clear speech, and adequate language skills.  R. 128.  With regard to Nieves's attention and concentration, Dr. Dubro concluded that he suffered from a mild impairment, but was still able to perform some basic mental arithmetic, including word problems.  Id.  He found that Nieves's memory skills were "[i]ntact," and that he could recall four out of four items after both one and five minutes, and repeat six digits forward and four digits backwards.  Id.  Dr. Dubro also found Nieves to have good insight and good judgment.  R. 129.

After performing a number of tests regarding Nieves's verbal and perceptual reasoning, verbal memory, and perceptual processing speed, Dr. Dubro concluded that Nieves performed in the "borderline" range or "low-average" range of cognitive functioning.  R. 136-37. Nonetheless, Dr. Dubro found that Nieves was able to "follow, understand, attend to, and remember directions and instructions," as well as "perform complex tasks independently and on a regular basis."  R. 129, 138.  Dr. Dubro found that "on subtests that assess verbal reasoning, each of [Nieves's] subtest scores fell in the average range."  R. 137.  Dr. Dubro also reported that

3

Nieves "enjoys reading."  Id.  Dr. Dubro concluded that although Nieves did suffer from some level of cognitive impairment, his problems would "not significantly interfere with [his] ability to function on a daily basis."  R. 138.

      B.      The ALJ's Decision

On May 31, 2013, the ALJ ruled that Nieves was "at fault" in causing SSA's overpayment of funds due to his failure to report his work activity, and rejected his request for waiver.  R. 22-23.

The ALJ rejected Nieves's argument that, by filing his tax returns with the federal government, he was by extension informing SSA of his work activity.  R. 21.  Finding that recipients of Social Security are notified of their obligation to report any work activity to SSA, the ALJ concluded that Nieves "knew or should have known that by not reporting his work activity to SSA an overpayment of benefits to him could occur."  Id.  The ALJ also rejected Nieves's claim that he lacked the mental capacity to be found "at fault" in causing SSA's overpayment.  R. 22.  Relying on Dr. Dubro's evaluation, the ALJ noted that Nieves had displayed an ability to perform complex tasks independently on a regular basis, notwithstanding his borderline range of cognitive functioning.  Id.  The ALJ also found convincing Dr. Dubro's conclusion that Nieves's cognitive problems would not cause a significant interference with his ability to function on a daily basis.  Id.

The Appeals Council denied Nieves's request for review on April 14, 2015, making the ALJ's determination the Commissioner's final decision.  R. 2-5.  Nieves filed the instant lawsuit to review that determination on June 1, 2015.  Complaint, filed June 1, 2015 (Docket # 2).

II.     APPLICABLE LAW

      A.      Scope of Judicial Review Under 42 U.S.C. §§ 405(g) and 1383(c)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted); accord Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008); see also 42 U.S.C. § 405(g) (2012) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); id. § 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g) . . . ."). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Burgess, 537 F.3d at 127-28; Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)); accord McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citation omitted). The Second Circuit has characterized the "substantial evidence" standard as "a very deferential standard of review—even more so than the 'clearly erroneous' standard."

Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam) (citation omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would <u>have to conclude otherwise</u>." <u>Id.</u> at 448 (emphasis in original) (citation and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." <u>Johnson</u>, 563 F. Supp. 2d at 454 (citation and internal quotation marks omitted).

      B.    <u>Overpayment of Benefits</u>

The Commissioner is authorized by statute to recover overpaid benefits. <u>See</u> 42 U.S.C. § 404(a). The statute provides, however, that there shall be no recovery from "any person who is without fault" if it is also the case that such a recovery "would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). The claimant bears the burden of proving both these matters. <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1042 (2d Cir. 1984); <u>accord</u> <u>Steinhardt v. Sullivan</u>, 752 F. Supp. 95, 97 (S.D.N.Y. 1990). Additionally, "[t]he Secretary's conclusion that a claimant was not without fault is a factual determination that must be upheld if it is supported by substantial evidence in the record as a whole." <u>Howard v. Sec'y of Dep't of Health & Human Servs. of U.S.</u>, 741 F.2d 4, 8 (2d Cir. 1984) (citation omtted).

To establish "fault," "[n]o showing of bad faith is required." <u>Center v. Schweiker</u>, 704 F.2d 678, 680 (2d Cir. 1983) (citations omitted). Rather, fault can be established from:

    (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
    (b) Failure to furnish information which he knew or should have known to be material; or
    (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507.  Furthermore, "[t]he fact that the SSA may have been at fault in making the overpayment does not relieve the recipient from liability for repayment if the recipient also was at fault."  Center, 704 F.2d at 680 (citing 20 C.F.R. § 416.552) (further citations omitted).

With regard to whether repayment would defeat the purposes of the Act, the Commissioner has "considerable discretion" in making this determination.  Valente, 733 F.2d at 1041 (citations omitted).  Furthermore, where a claimant fails to establish he was not "at fault" under the Act, this prong of the analysis need not be considered.  See, e.g., Gusky v. Astrue, 954 F. Supp. 2d 180, 192 (W.D.N.Y. 2013) ("Once a claimant is unable to meet the burden of establishing he was without fault with regard to an overpayment of benefits, a waiver [request] . . . must be denied.").

III.    DISCUSSION

Nieves has not filed any papers in connection with this federal court action other than a form complaint.  See Complaint, filed June 1, 2015 (Docket # 2).  At the administrative level, he did not dispute that an overpayment of benefits occurred or that the SSA's calculation of those benefits was mistaken.  R. 31-41.  He argued only that the overpayment was not his fault and that repayment would cause him an undue hardship.  Id.  Because we find that substantial evidence supports the Commissioner's conclusion that Nieves failed to show he was without fault in causing the overpayment of benefits, we do not address the issue of hardship.

There is substantial evidence to support the ALJ's finding that Nieves either "knew or should have known" of his obligation to report work activity to SSA, and that his failure to satisfy such an obligation could lead to an overpayment of benefits.  20 C.F.R. § 404.507(b).  Nieves's attorney conceded that he received letters from SSA that contained the requirement that he report

to SSA that he had started working.  See R. 155.[3]  While his attorney represented that Nieves did

not "pay as much attention to the contents" of the letters "beyond what was written on the first

page," id., the ALJ could properly decide that Nieves nonetheless "should have known," 20

C.F.R. § 404.507(b), of his obligation to report income, see Kennedy v. Apfel, 1998 WL 567676,

at *5 (S.D.N.Y. June 26, 1998) (plaintiff was charged with knowledge of the contents of his

application for benefits, even though he stated that he "simply signed it without reading it.")

(citations omitted).  That Nieves made an honest mistake in concluding that he did not need to

report his income would not negate the finding that he was at fault.  See, e.g., Center, 704 F.2d at

680 ("No showing of bad faith is required; rather, an honest mistake may be sufficient to

constitute fault."); Hill, ex rel. Hill v. Comm'r of Soc. Sec., 417 F. App'x 103, 104 (2d Cir. 2011)

(summary order) ("even an honest mistake would not relieve [the claimant] of her obligation to

return excess payments"); Cruz v. Astrue, 2009 WL 1835632 at *3 (S.D.N.Y. June 24, 2009) ("an

honest mistake may be sufficient to constitute fault.") (dictum); Stallings v. Bowen, 673 F. Supp.

884, 886 (E.D. Mich. 1987) ("although plaintiff did not read the application or receive a copy of

it, she was still charged with notice of its contents.").  Thus, the ALJ could properly disregard

Nieves's claim — presented by his attorney only in argument — that he believed any reporting

requirement had been satisfied by any tax filings with the IRS.  R. 155-56.

     Nieves also argued before the ALJ that he should not be found "at fault" for his failure to

report work activity because he was only notified of SSA's overpayment in 2011 — several years

after he had begun working again.  R. 31-32, 158-59.  This argument does not affect the ALJ's

---

     [3] While copies of these letters were not included in the administrative record, it appears
to have been uncontested that the letters made clear that a claimant had the obligation to report
any work to the SSA.  See R. 155.

conclusion because "[t]he fact that the SSA may have been at fault in making the overpayment does not relieve the recipient from liability for repayment if the recipient also was at fault." Center, 704 F.2d at 680 (citing 20 C.F.R. § 416.552) (further citations omitted).

Finally, the ALJ's determination of fault was not undermined by Dr. Dubro's report.  Dr. Dubro recognized that Nieves had a mild impairment in cognitive functioning.  R. 128, 136-37.  Nonetheless, he found that any such impairment would "not significantly interfere with [his] ability to function on a daily basis," R. 129, 138, and that Nieves was able to "follow, understand, attend to, and remember directions and instructions," as well as "perform complex tasks independently and on a regular basis," id.  Dr. Dubro also found Nieves to have an intact memory and both good insight and good judgment.  R. 128-29.  This evidence thus supports the ALJ's determination that Nieves held the requisite level of cognitive functioning to comprehend his obligations to SSA.

Accordingly, substantial evidence supported the agency's conclusion that Nieves was not without fault in receiving the overpayment.  Thus, it could properly deny a waiver.

IV.    CONCLUSION

The Commissioner's motion for judgment on the pleadings (Docket # 16) should be granted.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with

copies sent to the Hon. Ronnie Abrams at 40 Foley Square, New York, New York 10007. Any

request for an extension of time to file objections must be directed to Judge Abrams. If a party

fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner &

Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92

(2d Cir. 2010).

Dated: July 12, 2016
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to

Joel Nieves, Jr.
140 Elgar Place
Apt. 6M
Bronx, NY 10475-5272

Counsel by ECF

10